J.C. MENG, et al., Plaintiffs,

v.

BITUMINOUS CASUALTY
CORPORATION,
Defendant.

Civ. A. No. W85–0023(B).

United States District Court,
S.D. Mississippi, W.D.

Jan. 28, 1986.

Phillip A. Letard, Vidalia, La., Mark F. McIntosh and Kenneth A. Rutherford, Jackson, Miss., for plaintiffs.

Donald V. Burch, Frank C. Horton, Joy Lambert Phillips, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

The Court has before it the Motion of Defendant, Bituminous Casualty Corporation ("Bituminous"), for Summary Judgment and the Motion of Plaintiffs, J.C. Meng and J.C. Meng, Jr., d/b/a Meng Plumbing & Air Conditioning Company ("Meng"), for Partial Summary Judgment. The issues presented by both Motions are: (1) whether Bituminous is liable for a judgment rendered against Meng in prior litigation under a comprehensive general liabili-

ty insurance policy issued by Bituminous to Meng; and (2) whether Bituminous, as insurer, had a duty to defend Meng, as insured, in prior litigation.

### FACTS

Meng purchased a comprehensive general liability insurance policy from Bituminous. While that policy was in effect, Meng, as subcontractor, entered into a subcontract with Richard H. Thompson and Thompson Tree and Spraying Service, Inc. ("Thompson"), as general contractor, whereby Meng agreed to install a lawn sprinkler system for a subcontract price of $4500.00. When Thompson refused to pay Meng for the work performed under the subcontract, Meng sued Thompson in state court to recover the balance owed for the work performed and the material supplied.[1] Thompson answered and counterclaimed against Meng, alleging that the sprinkler system installed by Meng was defective as a result of faulty installation, workmanship and design. Thompson claimed that as a result of the allegedly defective sprinkler system, he suffered damages in the amount of $11,225.32.

Upon receipt of the counterclaim, Meng notified Bituminous and requested it to defend him against the counterclaim. Bituminous declined to provide a defense, contending that no coverage existed under Meng's policy. Thereafter, a judgment was rendered against Meng on Thompson's counterclaim on the basis that Meng breached his subcontract with Thompson by negligently installing the sprinkler system. Accordingly, judgment was rendered against Meng for $11,067.82, plus interest at 8% and all costs relating to the counterclaim. Bituminous refused to pay the judgment. Meng then instituted this action against Bituminous to recover the amount of the judgment rendered against him and the costs incurred to defend the suit.

Bituminous denies liability on the basis of the exclusions contained in its policy which provide as follows:

This insurance does not apply:

(a) To liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; ...

(l) To property damage to premises alienated by the named insured arising out of such premises or any part thereof;

(m) To loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality,. fitness or durability warranted or expressed by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

(n) To property damage to the insured's products arising out of such products or any part of such products;

(o) To property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ....

---

1. Meng sued Thompson for $7,729.97 plus attorneys fees, costs and interest. According to the material submitted by the parties in support of their Motions, Meng performed additional work for Thompson which apparently formed the basis for Meng's claim against Thompson.

## LAW

### (1) *Coverage.*

Exclusion (a) of the Bituminous policy excludes "liability assumed by the insured under any contract or agreement...." According to Meng, he undertook no such assumption of liability in connection with the subcontract and, Bituminous has not refuted this. Accordingly, exclusion (a) is inapplicable to the facts *sub judice.*

Exclusion (1) of the Bituminous policy excludes "property damage to premises alienated by the named insured...." The facts do not establish that Thompson seeks damages arising out of premises "alienated" by Meng. Indeed, there is no evidence that Meng ever owned or "alienated" the property. Accordingly, exclusion (1) is likewise inapplicable.

Exclusion (m), commonly referred to as the "business-risk" exclusion, *see, e.g.,* 2 R. Long, *The Law of Liability Insurance,* § 11.10, excludes "*loss of use* of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by ... the named insured of any contract or agreement, or (2) the failure of the named insured's products or work performed by ... the named insured to meet the level of performance ... the named insured to meet the level of the performance ... warranted or expressed by the named insured...." [Emphasis added]. Thus, exclusion (m) excludes coverage for loss of use claims caused by the insured's delay in or lack of performance or by defects in the insured's products or performance. As such, subsection (1) of exclusion (m) excludes coverage for an owner's delayed occupancy of a building caused by the insured's delayed performance. *See* 2 R. Long, *supra.* at § 11.10, p. 11–58. Likewise, Subsection (2) of exclusion (m) excludes an owner's delayed occupancy of a building caused by a defective product used by the insured in performing his work or by the insured's defective performance of the work. *Id.*

In this case, Thompson sought and recovered a judgment against Meng for $11,067.82. According to Thompson's deposition taken in the litigation between him and Meng, his damages included: (1) the costs to replace plants and trees planted by Thompson which died as a result of Meng's defective sprinkler system; (2) the cost to retain an expert to inspect Meng's defective sprinkler system; and (3) the cost to correct the defects in Meng's sprinkler system and to complete the sprinkler system. None of Thompson's claim against Meng sought damages for "loss of use" of property. Accordingly, exclusion (m) is inapplicable.

Exclusion (n), the "injury to product" exclusion, excludes "property damage to the insured's products arising out of such products...." This exclusion excludes the cost to repair or replace defective products used by the insured in performing his work. *See* 2 R. Long, *supra.* at § 11.12, p. 11–65. Although this exclusion excludes liability for the repair or replacement of the defective product itself, it does not exclude damage to other property caused by the defective product. *Id.* Accordingly, exclusion (n) does not apply to the damage to other property and Bituminous is liable, unless protected by exclusion (*o*), for the cost of replacing trees and plants planted by Thompson which died as a result of the defective sprinkler system. Bituminous is not liable for the cost of repairing or replacing the defective parts in the sprinkler system or for the cost of completing the sprinkler system. Moreover, the costs of retaining an expert to inspect the system for defective parts are excluded by exclusion (n) since this cost was related to the defects in the sprinkler system.

The "injury to work" exclusion, exclusion (*o*), excludes "property damage to work performed by ... the named insured arising out of the work ..., or out of materials, parts or equipment furnished in connection therewith...." This exclusion excludes liability for repair or replacement of work performed by the insured where

the damage to the work performed is caused by the work itself or by the materials, parts or equipment furnished in connection with the work. *See* 2 R. Long, *supra.* at § 11.3, p. 11–70. For instance, if Meng installed a faulty part in the sprinkler system which damaged other parts of the sprinkler system, then Bituminous would not be liable for the cost of repairing or replacing the system. Thus, any damages Thompson incurred to repair or replace the sprinkler system caused by Meng's installation of a defective part are not recoverable against Bituminous. However, exclusion (*o*) does not exclude liability for damage to other property caused by Meng's defective sprinkler system such as the plants which died as a result of the defective system. *See Todd Shipyard Corporation v. Turbine Service, Inc.*, 674 F.2d 401, 421 (5th Cir.1982); *Western Casualty & Surety v. Polar Panel Company*, 457 F.2d 957, 960 (8th Cir.1972); *Oliver B. Cannon & Sons, Inc. v. Fidelity & Casualty Company*, 484 F.Supp. 1375, 1383 (D.Del.1980); *Vobill Homes, Inc. v. Hartford Accident and Indemnity Company*, 179 So.2d 496, 497 (1965), *writ refused*, 248 La. 698, 181 So.2d 398 (1966). Accordingly, Bituminous is liable under its comprehensive general liability insurance for the damage to any *other* property, including damage to the plants and possibly other property, caused by Meng's defective sprinkler system. As such, Meng's Motion for Partial Summary Judgment on this point is hereby granted such that Bituminous is liable for damage to *other* property caused by the defective sprinkler system. This liability does not include the cost to retain an expert or the cost to correct and complete the sprinkler,[2] and in this regard the Motion for Summary Judgment of Defendant, Bituminous is granted in part.

**(2)** *Duty to Defend.*

In determining an insurer's duty to defend its insured, Mississippi has adopted the "allegations of the complaint" rule. *Universal Underwriters Insurance Company v. American Motorist Insurance Company*, 541 F.Supp. 755, 762 (N.D.Miss. 1982). Under this rule, an insurer's obligation to defend an action against its insured is determined by the allegations of the complaint. *Id.* Accordingly, the ultimate liability of the insurer is not the criterion for determining the insurer's duty to defend. Thus, if the factual allegations of the complaint bring the action within coverage of the policy, "irrespective of what the actual facts may later prove to be," the insurer is contractually bound to defend its insured. *Preferred Risk Mutual Insurance Company v. Poole*, 411 F.Supp. 429 (N.D.Miss.1976). In other words, if the factual allegations of the complaint allege coverage under the policy, then the insured is obligated to defend regardless of the ultimate outcome of the action.

On the other hand,

[w]here [the] complaint fails to·state [a] cause of action covered by the policy, but [the] insured informs [the] insurer that true facts are inconsistent with [the] complaint, or insurer learns from independent investigation that the true facts, if established, present potential liability of [the] insured, insurer must defend until it appears that facts upon which liability is predicated exclude insurance coverage.

*Mavar Shrimp and Oyster Company v. United States Fidelity & Guaranty Company*, 187 So.2d 871, 875 (Miss.1966) (quoting *Crum v. Anchor Casualty Company*, 119 N.W.2d 703, 703 (Minn.1963)). In *Ma-*

**2.** Bituminous also alleges that Endorsement No. 3 to its policy, entitled "Partial Schedule of Classifications of Operations Subject to One or More of the Explosion Hazard, Collapse Hazard and Underground Property Damage hazard exclusions", excludes coverage of property damage to landscape gardening when construed with coverage part L6394XA, entitled "Additional Declarations." We agree with Meng that the classification of operations included on the partial schedule, including landscape gardening, are excluded from coverage only insofar as the property damage in question is included within the explosion, collapse or underground property damage hazard. The property damage in this case was not connected with any of these three hazards.

*var,* the Mississippi Supreme Court held that where the allegations of the complaint do not allege coverage but the insurer knows of facts that indicate coverage then the insurer has a duty to defend its insured. *See also State Farm Mutual Automobile Insurance Co. v. Taylor,* 233 So.2d 805, 808 (Miss.1970). As such, two rules emerge from the Mississippi cases. Where the complaint alleges factual allegations which fall within the terms of the policy, the insurer is obligated to defend regardless of its ultimate liability and regardless of the fact that the suit may be groundless, false or fraudulent. Conversely, where the complaint alleges facts which fall within a policy exclusion, the insurer is not obligated to defend unless it later learns or is apprised of facts which indicate coverage. Accordingly, although

> ... a divergence may exist between the facts as alleged in the petition and the actual facts as they are known to or reasonably ascertainable by the insurer, in which later case the insurer has a duty to defend, notwithstanding a policy exclusion....

*State Farm Mutual Automobile Insurance Co. v. Taylor,* 233 So.2d at 808. Under these circumstances, the insurer is obligated to defend until it appears that coverage is excluded.

In this case, the allegations of Thompson's counterclaim fell within a policy exclusion. Accordingly, Bituminous was justified in refusing to defend Meng against Thompson's counterclaim based upon the allegations of Thompson's counterclaim. However, Thompson was subsequently deposed and revealed that the majority of damage he sustained as a result of Meng's defective sprinkler system was the cost to replace plants and trees which died as a result of Meng's defective sprinkler system. According to the uncontradicted affidavit of Phillip A. LeTard, Meng's counsel in the prior litigation, Meng's demand upon Bituminous to defend, made upon receipt of Thompson's counterclaim, was renewed upon discovery of Thompson's damages. At that point, Bituminous had an obligation to defend since the facts indi-

cated coverage. Having failed to do so, Bituminous is liable for attorney's fees, expenses, costs and any other damages which Meng incurred after Thompson's deposition as a result of Bituminous' breach of its contract with Meng. *Brickell v. United States Fire Insurance Company,* 436 So.2d 797, 801–02 (Miss.1983). Accordingly, Meng's Motion for Partial Summary Judgment is likewise granted on this point.

Since the issues of liability have been determined and since only the issue of damages remains, the Court requests the parties to confer and notify the Court concerning whether this issue can be disposed of, by agreement, affidavit or otherwise, without the necessity of a full trial.