EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Deborah Corn, and Peggy Honeycutt, Plaintiffs,

v.

SOUTHERN PUBLISHING COMPANY, INC., and Thelma Thompson, Defendants,

v.

SOUTHERN GUARANTY INSURANCE COMPANY, Intervenor.

Civ. A. No. E87–0004(L).

United States District Court, S.D. Mississippi, E.D.

Dec. 22, 1988.

Jerome C. Rose, Birmingham, Ala., Wayne Milner, Jackson, Miss., for plaintiffs.

Shirley Payne, Jackson, Miss., for Robert Thompson.

James L. Carroll, Jackson, Miss., for Southern Guar.

Paul M. Neville, Jackson, Miss., for Southern Pub. and Thelma Thompson.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on cross motions of intervenor Southern Guaranty Insurance Company and of defendant Southern Publishing Company, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Each has timely responded to the motion of the other and the court has considered the memoranda of authorities together with attachments submitted by the parties.

Plaintiffs in this lawsuit, Deborah Corn and Peggy Honeycutt, both former employees of Southern Publishing, and the Equal Employment Opportunity Commission brought this action charging that Corn's and Honeycutt's employment with Southern Publishing was terminated in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e through 2000e–17. The private plaintiffs also asserted a claim against Southern Publishing and its president, Thelma Thompson, for slander and included a charge of assault and battery against Southern Publishing and an employee, Robert Thompson. Southern Guaranty, as insurer of Southern Publishing under two policies of insurance, intervened in this lawsuit seeking a declaration that the claims in this case are not insured under the policies in question and that it therefore is not required to defend or indemnify the defendants.

Two policies of insurance are at issue in the case at bar, the first being a policy of worker's compensation insurance and employer's liability insurance, policy number WC–6991, and the second being a special multi-peril policy, policy number SM 10925, which included a broad form comprehensive general liability endorsement. Under both policies of insurance, Southern Publishing is the named insured; under policy number SM 10925, Thelma Thompson, as president of Southern Publishing, is also classified as an insured. According to these defendants, since liability is sought to be imposed on Southern Publishing under the principle of *respondeat superior* for the alleged assault and battery committed by Robert Thompson and the alleged slander by Thelma Thompson, there exists coverage under either or both policies which invokes the insurer's defense obligations as well as an obligation to indemnify in the event a judgment is obtained against defendants.

Under Mississippi law, an insurer's duty to defend an action against its insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and only if the pleadings state facts which bring the injury within the coverage of the policy is the insured required to defend. *Foreman v. Continental Casualty Co.,* 770 F.2d 487 (5th Cir.1985) (citing *Battisti v. Continental Casualty Co.,* 406 F.2d 1318 (5th Cir.1969)); *see also Putman v. Insurance Co. of North America,* 673 F.Supp. 171 (N.D.Miss.1987) (duty of insurer to defend determined by allegations of complaint). As the court explained in *J.C. Meng v. Bituminous Casualty Corp.,* 626 F.Supp. 1237 (S.D.Miss.1986),

> [i]n determining an insurer's duty to defend its insured, Mississippi has adopted the "allegations of the complaint" rule ... Under this rule, an insurer's obligation to defend an action against its insured is determined by the allegations of the complaint.... Accordingly, the ultimate liability of the insurer is not the criterion for determining the insurer's duty to defend..... Where the complaint alleges factual allegations which fall within the terms of the policy, the insurer is obligated to defend regardless of its ultimate liability and regardless of the fact that the suit may be groundless, false or fraudulent. Conversely, where a complaint alleges facts which fall within a policy exclusion, the insurer is not obligated to defend unless it later learns or is apprised of facts which indicate coverage.

*J.C. Meng,* 626 F.Supp. at 1240–41. The claims in the case *sub judice* which are

alleged by Southern Publishing to implicate Southern Guaranty's defense obligations are those charging assault and battery and slander. However, by separate memorandum opinion and order entered on this date, the state law claims of assault and battery and slander have been dismissed as time-barred[1] such that the sole remaining basis for potential liability in this lawsuit is an alleged violation of Title VII.[2] The dismissal of the state law tort claims precludes the possibility of any recovery by defendants under the policies of insurance in question since their claims of coverage were based solely on those tort claims and not on the Title VII claims. Dismissal of those claims also relieves any duty to defend which may have arisen by virtue of the tort allegations of the complaint. However, the fact that those issues were ultimately disposed of is not determinative of whether there was a duty on the part of Southern Guaranty to defend as to those claims through their dismissal.

■ Under Mississippi law, where an insured is placed in a position of defending suit where its insurer has wrongfully declined to do so, the insured may recover its costs and attorney's fees incurred in defending those claims. *See Brickell v. United States Fire Ins. Co.*, 436 So.2d 797 (Miss.1983) (unjustified refusal to defend is breach of contract which renders insurer liable for damages). Under the circumstances of the present case, Southern Publishing and Thelma Thompson tendered defense of the lawsuit to Southern Guaranty on May 20, 1987; on September 4, 1987, Southern Guaranty notified its insureds that it denied coverage and refused to defend or indemnify them. Three months later, Southern Guaranty filed its complaint in intervention seeking a determination by the court that it is not required to defend or indemnify the defendants. The insureds retained counsel and defended this suit at their expense following Southern Guaran-

ty's refusal to defend. The question, therefore, is whether, based on the allegations of the complaint, Southern Guaranty was under an obligation to defend the tort claims or whether, as Southern Guaranty contends, those claims were excluded from coverage such that no duty to defend arose. To answer this question, reference must be made to the provisions of the policies upon which the parties rely.

Policy number WC–6991 provides "employer's liability insurance" which "applies to bodily injury by accident, or bodily injury by disease." Excluded from coverage is "bodily injury intentionally caused or aggravated by [Southern Publishing]." The insurance also does not cover "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law." Southern Guaranty urges that no coverage and hence no duty to defend arises under this policy because there is no claim for bodily injury and since the complaint states that all of the defendants' actions were intentional. Additionally, it contends that the claims fall within the unlawful discrimination exclusion of the policy.

■ While the complaint of the private plaintiffs, Deborah Corn and Peggy Honeycutt, does not allege specifically that either received "bodily injury" as a result of the alleged assault and battery by Robert Thompson, the complaint does state that "Deborah Corn and Peggy Honeycutt have suffered *physical pain* as well as embarrassment, humiliation and emotional distress." (emphasis added) In the court's opinion, the allegation of physical pain is a sufficient allegation of bodily injury, particularly since "physical pain" is alleged to have resulted from an assault and battery. *See Foreman*, 770 F.2d at 489 (5th Cir. 1985) (applying Mississippi law) (allegation of physical assault on and sexual molesta-

---

1. The assault and battery charge was initially brought against Robert Thompson, the alleged assailant, and against Southern Publishing under the doctrine of *respondeat superior*. The private plaintiffs voluntarily dismissed Thompson from the suit early in the litigation, but continued to assert the liability of Southern

Publishing for the conduct of its employee, Thompson.

2. The claims were dismissed on motion of Southern Guaranty, not at the instance of the named defendants.

tion of child was claim for bodily injury); *see also Hendrix v. Employers Mutual Liab. Ins. Co. of Wisconsin,* 98 F.Supp. 84, 86 (E.D.S.C.1951) (action for assault and battery is action for bodily injury); *cf. American and Foreign Ins. Co. v. Church Schools,* 645 F.Supp. 628 (E.D.Va.1986) (no coverage for bodily injury since claimant pled only emotional damage from sexual touching).[3]

██ Southern Guaranty next reasons that even if the court were to conclude that this lawsuit contains claims for "bodily injury," those claims are nevertheless not covered since any bodily injury was not caused by accident or is excluded from coverage by virtue of the policy exclusion for "bodily injury intentionally caused or aggravated by" Southern Publishing. The employer's liability insurance policy in the case at bar covers bodily injury caused by "accident," though the policy contains no definition of the term "accident." Whether or not the alleged assault and battery may be appropriately characterized as an accident so as to bring those claims within the ambit of coverage depends upon from whose standpoint the conduct is viewed.

In *Georgia Casualty Co. v. Alden Mills,* 156 Miss. 853, 127 So. 555 (1930), an issue presented was whether an assault "willfully and intentionally inflicted by [an insured company's] foreman was not covered by an insurance contract which provided indemnity only for 'injuries accidentally suffered'." The court held that "[w]hether an injury is accidental, is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental." Thus, from the victim's standpoint, an "unprovoked assault" was held to be within the terms of the policy inasmuch as it was an "accident." *Alden Mills,* 127 So. at 557; *see also Western Casualty & Surety Co. v. Aponaug Mfg. Co.,* 197 F.2d 673 (5th Cir. 1952). More recently, in *Berry v. McLe-*

*more,* 795 F.2d 452 (5th Cir.1986), the Fifth Circuit concluded that a town police officer's act of shooting an arrestee was not an accident within the meaning of the town's liability insurance policy. However, in *Berry,* unlike the present case, the policy provided coverage for bodily injury caused by an "occurrence" and explicitly defined "occurrence" as "[a]n accident ... which result[s] in bodily injury ... *neither expected [n]or intended from the standpoint of the insured."* *Berry,* 795 F.2d at 456 (emphasis added). Similar results have been reached in a number of cases decided under Mississippi law, but in each case, the language of the policy itself dictated that an injury could be considered an accident where it was neither expected nor intended from the insured's standpoint. *See Allstate Ins. Co. v. Moulton,* 464 So.2d 507, 510 (Miss.1985) (insured's malicious prosecution of another held not an "accident" or "occurrence" within insurance coverage where terms of policy required interpreting "occurrence" or "accident" from standpoint of insured and thus precluded court from interpreting it from standpoint of injured party); *Gulf Ins. Co. v. Lloyd,* 651 F.Supp. 518 (S.D.Miss.1986) (insured's killing of assailant not "occurrence" or "accident" since insured intended to draw gun); *Kipnis v. Antoine,* 472 F.Supp. 215 (N.D.Miss. 1979) (insured's intentional shooting of fellow employee not accident within coverage of policy since act was intentional from standpoint of insured).

In the case at bar, unlike the cases referenced, the policy does not define accident nor does it provide from whose viewpoint actions claimed to be accidental should be evaluated. Accordingly, the rule stated in the *Alden Mills* case appears to be applicable. Based on the facts alleged in the instant case, from the standpoint of Corn and Honeycutt, the "victims" of the assault and battery, the injury to them was "accidental" since the injury was the result of

---

**3.** According to Southern Guaranty, discovery, and in particular the deposition of Peggy Honeycutt, demonstrates a complete absence of any bodily injury to her as a result of the alleged improper touching and grabbing by

Robert Thompson. However, as the court has previously stated, whether there exists a duty to defend on the part of the insurer is determined by reference to the allegations of the complaint.

an external force, not of their choice or provocation. Thus, the claims of assault and battery are covered by the employer's liability policy unless an exclusion applies.

■ The policy excludes from coverage "bodily injury intentionally caused or aggravated by [Southern Publishing]." The intervenor reasons that since the torts of assault and/or battery implicitly require "intent" on the part of the actor, coverage for those claims is clearly excluded. In the case at bar, there is no allegation in the complaint that the insured, Southern Publishing, intended that Robert Thompson commit the causing act of touching and grabbing Corn and Honeycutt, nor is there any allegation that either Robert Thompson or Southern Publishing intended to inflict any injury or, for that matter, that injury was likely to result.[4]

Moreover, the obvious purpose of an exclusion from coverage of injuries "intentionally caused or aggravated by" an insured is to prevent the insured's recovering for its own wrongs or unlawful acts. In the *Alden Mills* case involving similar facts, the Mississippi Supreme Court observed that while the insured employer was responsible under the doctrine of *respondeat superior* for the assault committed by its employee, the company did not itself commit the unlawful act. The court concluded that

> where a policy is legal on its face, and does not undertake to indemnify the insured against consequences of its own illegal acts, it is not void because its effect is to indemnify the insured against the consequences of the illegal or criminal acts of others, without participation on the part of the insured.... "One may lawfully insure another against the consequences of such acts (illegal acts) committed by servants and employees, if such acts are not directed by, or participated in, by the insured."

*Alden Mills*, 127 So. at 557 (quoting *Taxicab Motor Co. v. Pacific Coast Cas. Co. of San Francisco*, 73 Wash. 631, 132 P. 393 (1913)). *See also Robinson v. United States Fid. & Guar. Ins. Co.*, 159 Miss. 14, 131 So. 541 (1931) (quoting *Alden Mills*). Under the circumstances, it is clear that Southern Publishing did not intentionally cause either Thompson's acts or the resulting injury such that coverage would be excluded.

■ Southern Guaranty urges alternatively that the exclusion from coverage of damages arising from unlawful discrimination against any employee applies and defeats coverage. It reasons that the essence of all the charges against defendants is sex discrimination in violation of Title VII; the assault and battery and slander claims are merely intended to prove or be evidence of that discrimination. The court cannot accept this contention. Claims for assault and battery, even of a sexual nature, may stand alone as separate from any claimed violation of Title VII. The mere fact that plaintiffs brought both claims in one lawsuit does not, in the court's opinion, justify treatment of the assault and battery claims as nothing more than evidence of alleged discrimination.

The court concludes that because, under the facts alleged, there existed potential coverage under the employer's liability insurance policy issued by Southern Guaranty to Southern Publishing for the assault and battery claims of Corn and Honeycutt, it was incumbent upon Southern Guaranty to defend its insured against those claims from the initiation of this lawsuit through dismissal of those claims.[5] The company failed in that regard and is therefore liable to Southern Publishing for its reasonable costs and expenses incurred in defending against those claims.

■ Although the court finds that there did exist a duty to defend as to the

---

**4.** Under a most liberal reading of the complaint, all that can be said is that if Southern Publishing in any way contributed to the acts of Robert Thompson, it did so negligently by failing to control him and thereby prevent the alleged improper conduct.

**5.** The court's conclusion that there did exist a defense obligation under the liability policy obviates the need to consider whether the assault and battery charges in the complaint indicated potential coverage and hence a duty to defend under the special multi-peril policy.

charges of assault and battery, the same is not true as to the alleged slander committed against Deborah Corn by Thelma Thompson. A cause of action for defamation is a relational interest tort intended to redress injury to reputation. The damages recoverable are for the injury to reputation, though the damages may also include as an additional element emotional or mental harm. *See Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238 (5th Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 973 (1981). Here, certainly no bodily injury resulted from the alleged slander. In fact, the victim of the alleged slander was not even aware of the statements made until after this lawsuit was filed. Thus, under the policy of employers liability insurance, policy number WC–6991, which covers only claims for bodily injury, the claim for slander is not within the coverage provided.

■ Unlike the employer's liability policy, the special multi-peril policy, number SM 10925, and specifically, the broad form comprehensive general liability endorsement of that policy, provides coverage for "personal injury" which is defined to include "a publication or utterance of a libel or slander or other defamatory disparaging material or in violation of an individual's right of privacy." However, the policy further specifically excludes from coverage personal injury arising out of libel or slander "made by or at the direction of the insured with knowledge of the falsity thereof." Corn's allegation of slander against Thelma G. Thompson recites that a slanderous statement about Corn was made by Thompson which "was known ... to be untrue and without justification and was made with malicious intent." Since Thelma Thompson is an "insured" under the policy in question and further since the complaint clearly seeks damages for a slanderous statement made by Thelma Thompson, the referenced policy exclusion precludes a finding that the claim for slander is insured.

■ The sole remaining issue on the present motions is in regard to the amount of damages incurred by Southern Publishing as a result of Southern Guaranty's failure to defend against the assault and battery claims. While it is perhaps correct as a general proposition that

"[a] liability insurer is liable to the insured for his expenses in defending an action against him based upon claims falling both within and without policy coverage where the insurer has failed to defend the action notwithstanding a policy provision requiring the insurer to defend actions on claims covered by the policy ....",

41 A.L.R.2d 434, 456 (1955), application of this principle under the particular circumstances of the case *sub judice* would, in the court's view, be clearly inequitable. In this connection, the court notes that when the EEOC filed suit in January 1987, no claims arguably within coverage of either of the Southern Guaranty policies were included; the suit charged sex discrimination and nothing more. The tort claims were first brought by the complaint in intervention of Honeycutt and Corn on August 12, 1987 and only then did there become an issue of potential coverage. Moreover, despite the fact that the tort claims were clearly filed outside the applicable limitations period, Southern Publishing made no affirmative effort to secure dismissal of those claims. Rather, it was Southern Guaranty, not Southern Publishing, which ultimately moved to have those claims dismissed as time-barred. Although Southern Publishing urges that it did, in the forefront, seek to prevent the intervention of Corn and Honeycutt in the lawsuit and thereby to prevent their assertion of the tort claims, and further claims that it raised the statute of limitations as a defense at that time, the issue certainly was not pressed by Southern Publishing. Given these facts, the court finds that, while Southern Guaranty should be required to pay to defendants their costs, including attorney's fees, in defending the tort claims asserted by the individual defendants, Southern Guaranty should not be required to respond in damages for any defense costs associated with defense against the Title VII claims. While the court would not go so far as to impute to defendants an improper motive in

their failure to take reasonable steps to obtain an expeditious dismissal of the obviously time-barred claims,[6] in the court's view, it would be highly inequitable to require Southern Guaranty to pay for the defense of clearly noninsured claims where the only potential for coverage arose long after institution of the lawsuit itself and where any defense obligation was invoked and continued only by virtue of what were obviously time-barred tort claims which could have been, with little time and effort, quickly disposed of.[7]

Accordingly, it is ordered that the motion of intervenor Southern Guaranty is granted in part and denied in part and the motion of Southern Publishing is granted in part and denied in part all as provided in this memorandum opinion and order.

ORDERED.

William Lamoreaux, Dallas, Tex., for plaintiff.

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, Dallas, Tex., for defendants.

---

**6.** Southern Guaranty posits that the defendants' failure or refusal to secure dismissal of those claims was an obvious effort to force Southern Guaranty to defend non-insured sexual harassment and discrimination charges.

**7.** The court would observe that inasmuch as Southern Guaranty was in fact responsible for securing dismissal of the tort claims and little actual "defense" to those claims occurred prior to their dismissal, the damages to Southern Publishing are likely minimal.