**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiffs,**

**and**

**Southern Guaranty Insurance Co., Intervenor–Appellee Cross–Appellant,**

**v.**

**SOUTHERN PUBLISHING CO., INC., Defendant–Appellant Cross–Appellee.**

**No. 89–4176.**

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1990.

Paul M. Neville, Jackson, Miss., for defendant-appellant cross-appellee.

William F. Ray and James L. Carroll, Watkins & Eager, Jackson, Miss., for intervenor-appellee cross-appellant.

Before REAVLEY and KING, Circuit Judges, and LAKE,* District Judge.

LAKE, District Judge:

Southern Publishing Company, Inc., and its insurer, Southern Guaranty Insurance Company, both appeal from a judgment of the district court requiring Southern Guaranty to reimburse Southern Publishing for reasonable costs in defending tort actions brought against Southern Publishing and two of its employees. We affirm the district court's judgment.

## I. Facts and Proceedings Below

On January 12, 1987, the Equal Employment Opportunity Commission ("EEOC") filed a complaint in the United States District Court for the Southern District of Mississippi against Southern Publishing, a magazine publisher in Meridian, Mississippi. The EEOC alleged sexual harassment resulting in constructive and retaliatory discharge based on complaints by two former Southern Publishing employees, Debra Corn and Peggy Honeycutt. On April 30, 1987, Corn and Honeycutt moved to intervene as plaintiffs. In addition to the relief sought by the EEOC, Corn and Honeycutt sought to present state common law claims for assault and battery against Southern Publishing and an employee, Robert

Thompson, and Corn sought to present a state common law claim for slander against Southern Publishing and its president, Thelma Thompson.

Southern Publishing was insured under two policies issued by Southern Guaranty: a workers' compensation and employers liability policy and a special multi-peril policy. On May 20, 1987, Southern Publishing notified Southern Guaranty of the motion to intervene and the assertion by Corn and Honeycutt of the new, non-Title VII, claims against it and Thelma and Robert Thompson and tendered the defense of the case to Southern Guaranty. On July 14, 1987, Southern Publishing, through its own counsel, filed a motion to deny the intervention of Corn and Honeycutt to the extent it sought to add additional defendants and to assert state law claims. Among its arguments against intervention, Southern Publishing contended that the state law claims were barred by the Mississippi statute of limitations. On July 28, 1987, the district court allowed the intervention of Corn and Honeycutt. Southern Publishing's motion to reconsider was denied, and on August 12, 1987, Corn and Honeycutt filed their intervention.

Because of the issues raised by this appeal it is necessary to chronicle Corn and Honeycutt's allegations in some detail. Paragraph 10 of their complaint alleges that Robert Thompson was guilty of "continued and persistent grabbing and touching of private parts of Peggy Honeycutt's body against her consent." Paragraph 16 alleges that "Robert Thompson had committed assault and battery on the Plaintiffs Peggy Honeycutt and Debra Corn." Paragraph 12 alleges that Thelma Thompson told Corn's new employer "that Debra Corn was fired because she had sabotaged the office computer, or words to that effect." Paragraph 18 alleges:

The statement of Defendant Thelma G. Thompson to Debra Corn's new employer was false and without justification, and was known by the said Defendant to be false or was stated with gross and reckless disregard of the truth, and was spo-

* District Judge of the Southern District of Texas, sitting by designation.

ken with such malicious intent as to arise to the level of slander per se.

Paragraph 21 alleges that both Corn and Honeycutt "have suffered physical pain as well as embarrassment, humiliation and emotional distress."

On September 4, 1987, Southern Guaranty notified Southern Publishing of its denial of coverage and refusal to defend. Southern Guaranty was allowed to intervene to seek a declaration that there was no coverage and no duty to defend under its policies. Southern Guaranty, as intervenor, also moved for dismissal of Corn and Honeycutt's tort claims based upon the Mississippi one-year statute of limitations. Southern Publishing counterclaimed for a declaration of coverage and that Southern Guaranty owed it a duty to defend and to reimburse it for "all costs and attorneys' fees, including those paid or incurred to date." The parties filed cross-motions for summary judgment on the pleadings.

On November 7, 1988, the district court dismissed all of the tort claims of Corn and Honeycutt on limitations grounds. In a separate memorandum opinion and order entered on the same day the court also addressed the insurance coverage issues. The court found that the claims of Corn and Honeycutt for assault and battery were potentially covered under Southern Guaranty's employers liability policy and that Southern Guaranty's failure to defend these claims was a breach of its policy obligations. The court found that Corn's claim for slander was not covered under either policy because it did not allege a "bodily injury" within the meaning of the policies. The court ruled that only those expenses incurred by Southern Publishing in defending against the assault and battery claims should be reimbursed to Southern Publishing and requested affidavits to establish those expenses. The district court's memorandum and order does not mention expenses incurred by Southern Publishing in defending the Title VII claims.

Southern Publishing moved to amend the court's findings and conclusions on two grounds relevant to this appeal: (1) the slander claim was covered as a "personal injury" under the multi-peril policy, and (2) since Southern Guaranty had wrongfully denied coverage, it was obligated for the full cost of Southern Publishing's defense, including the Title VII claims.

On December 23, 1988, the district court withdrew its original opinion and order and substituted a new memorandum opinion and order. 705 F.Supp. 1213. The court concluded that the slander claim came within the special multi-peril policy definition of "personal injury," but held that the claim was not covered because of a policy exclusion for slander made by or at the direction of the insured with knowledge of its falsity. Even though the Court found that Southern Guaranty owed no duty to defend the slander claim, the court held that "Southern Guaranty should be required to pay defendants their costs, including attorney's fees, in defending the *tort claims* ..." 705 F.Supp. at p. 1219, (emphasis added). The Court held, however, that in light of the equities of the case Southern Guaranty was not obligated for defense costs associated with the defense of the Title VII claims.

After affidavits of attorney's fees and expenses were submitted, the court entered an order on February 15, 1989, that Southern Publishing recover $150.00 from Southern Guaranty for defending against the "tort claims" of Corn and Honeycutt. The order makes no distinction between expenses incurred in defending the assault and battery and slander claims. Indeed, the order repeatedly refers to the "tort claims" that the court previously dismissed on limitations grounds.

On February 23, 1989, a final judgment was entered from which both parties appeal. Southern Guaranty argues that the district court erred in holding that the assault and battery claims were covered, while Southern Publishing argues that the district court erred in holding that the slander claim was excluded from coverage and in refusing to require Southern Guaranty to reimburse it for all defense costs.

## II.  Standard of Review

For summary judgment to be granted, the movant must demonstrate that there is no genuine issue as to any material fact. *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 904 (5th Cir. 1985).  Fed.R.Civ.P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).  Under this standard fact questions are considered with deference to the non-movant.  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The construction and effect of an insurance policy are questions of law reviewable *de novo* on appeal.  *Diversified Group, Inc. v. Van Tassel*, 806 F.2d 1275, 1277 (5th Cir.1987).

### III.  Coverage of the Assault and Battery Claims

The workers' compensation and employers liability policy issued by Southern Guaranty to Southern Publishing provides in pertinent part:

PART TWO—EMPLOYERS LIABILITY INSURANCE

A.  How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease.

.        .        .        .        .

B.  We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

.        .        .        .        .

C.  Exclusions

This insurance does not cover:

.        .        .        .        .

5.  bodily injury intentionally caused or aggravated by you;

.        .        .        .        .

7.  damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law.

D.  We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.

.        .        .        .        .

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Southern Guaranty argues that Corn and Honeycutt's allegations of assault and battery were not covered as "bodily injuries" under this policy because Corn and Honeycutt alleged that the assault and battery resulted in purely emotional rather than physical or "bodily" injury.  We disagree.

In determining an insurer's duty to defend its insured, Mississippi has adopted "the allegations of the complaint" rule.  *J.C. Meng v. Bituminous Casualty Corp.*, 626 F.Supp. 1237 (S.D.Miss.1986). Under this rule an insurer's duty to defend an action against its insured is measured by the allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action.  While Corn and Honeycutt's complaint does not expressly allege that either of them was injured as a result of the assault and battery by Robert Thompson, paragraph 21 of the complaint alleges that "Debra Corn and Peggy Honeycutt have suffered *physical pain* as well as embarrassment, humiliation and emotional distress."  (Emphasis added).  We agree with the district court that this allegation of physical pain is sufficient, in connection with the allegations of "continued and persistent grabbing" and "assault and battery," to allege "bodily injury" [1] under the policy.  Since a claim for bodily injury was made under the policy, we conclude that the district court correctly found that under Mississippi law Southern Guaranty was

---

1.  Normally, a court will look to the policy definition and state court precedent as aids in interpreting a term such as this.  Southern Guaranty's workers' compensation and employers liability policy does not define "bodily injury," however, and the Mississippi courts have not defined "bodily injury" in the context of alleged employee molestation claims.

required to assume the defense of these claims.[2]

#### IV. Slander Claim Coverage

█ The special multi-peril policy issued by Southern Guaranty provides in pertinent part:

**II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, ...

(B) This insurance does not apply:

. . . . .

(4) to personal injury or advertising injury arising out of libel or slander or the publication or utterance or defamatory or disparaging material concerning any person ... made by or at the direction of the insured with knowledge of the falsity thereof;

. . . . .

(D) "Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period:

. . . . .

3. a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

**X. ADDITIONAL PERSONS INSURED**

As respects bodily injury, property damage and personal injury and advertising injury coverages, under the provision "Persons Insured," the following are added as insured:

. . . .

(B) Employee—Any employee (other than executive officers) of the named insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

(1) to bodily injury or personal injury to another employee of the named insured arising out of or in the course of his employment;

. . . . .

Southern Publishing argues that since the complaint alleges an alternative claim for negligent slander, the district court erred in refusing to find that the slander claim was covered by this policy. We agree.

The policy provides coverage for libel, slander, and defamatory remarks, unless they were "made by or at the direction of the insured with knowledge of the falsity thereof." A plain reading of this provision leads us to conclude that the policy excludes only intentional slander. The district court correctly concluded that Corn's claim for intentional slander is not covered under the policy. However, Corn also alleged negligent slander. Paragraph 18 of her complaint asserts that Thompson's statement "was known by the said Defendant to be false *or was stated with gross and reckless disregard of the truth*".... (Emphasis added).

Under Mississippi's "allegations of the complaint" rule if the factual allegations of

---

**2.** Southern Guaranty also argues that Corn and Honeycutt's assault and battery claims were not covered because of the exclusion for "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law." We agree with the district court that the assault and battery claims "may stand alone as separate from any claimed violation of Title VII. The mere fact that plaintiffs brought both claims in one lawsuit does not ... justify treatment of the assault and battery claim as nothing more than evidence of alleged discrimination." (705 F.Supp. at p. 1218).

the complaint bring the action within coverage of the policy, the insurer has a duty to defend. Since Corn's claim for negligent slander is within the policy's coverage, Southern Guaranty had a duty to defend Southern Publishing against the claim. We therefore conclude that the district court erred in holding that the slander claim was excluded from coverage under the policy's exception for intentional conduct of the insured.

## V. Prorationing of Defense Costs

■ Southern Publishing argues that the district court erred in not requiring Southern Guaranty to pay the entire cost of defending the action, including the Title VII claims.[3] The district court noted that as a general proposition

[a] liability insurer is liable to the insured for his expenses in defending an action against him based upon claims falling both within and without policy coverage where the insurer has failed to defend the action notwithstanding a policy provision requiring the insurer to defend actions on claims covered by the policy....

41 A.L.R.2d 434, 436 (1955). The court properly observed, however, that this rule cannot be applied rigidly without considering the equities of each case.

The basis for the rule was explained in *Insurance Company of North America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1224–25 (6th Cir.1980), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981).

What [the insured] ignores is the *rationale* on which its authorities are based. An insurer must bear the entire cost of defense when "there is no reasonable means of prorating the costs of defense between the covered and the not-covered items." ... These considerations do not apply where defense costs can be readily apportioned. The duty to defend arises solely under contract ... Where the dis-

tinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

(Citation and footnotes omitted.) In a later opinion in the same case the Sixth Circuit concluded that "[w]here costs can be readily apportioned, as here, it is reasonable to have [the insured] pay its fair share of defense costs as well as indemnification costs." *Insurance Company of North America v. Forty–Eight Insulations, Inc.*, 657 F.2d 814, 816 (6th Cir.1981) (petition for rehr'g). Likewise, in *Budd Company v. Travelers Indemnity Company*, 820 F.2d 787, 790 (6th Cir.1987), the Court again refused to follow rigidly the rule urged by Southern Publishing:

In *Forty–Eight Insulations*, we refused to allow the insured to reap the benefits of a free defense when the underlying liability clearly fell outside the scope of the policy coverage. In the present case, we are compelled to do the same.

■ We agree with the Sixth Circuit that the general rule should apply only where "there is no reasonable means of prorating the costs of defense between the covered and not-covered items." *Forty–Eight Insulations*, 633 F.2d at 1224. In this case, because the district court found that the statute of limitations barred all of the intervenors' tort claims, the court had no difficulty in prorating the cost of defense between those claims and intervenors' Title VII claims. Furthermore, we are not persuaded that the equities of the case compel imposition of all defense costs against Southern Guaranty.

As the district court properly observed, Southern Guaranty's defense obligation was invoked and continued only because of Corn and Honeycutt's time-barred tort claims, which could have been easily disposed of by Southern Publishing. Despite the facts that the tort claims were clearly filed outside the applicable limitations peri-

**3.** Normally, our conclusion that Southern Guaranty owed a duty to defend the slander claim would pretermit our consideration of the proration issue until the district court had determined whether to award Southern Publishing the costs of defending the slander claim and, if

so, the amount of such costs. However, because, as explained in Part I, the final judgment already includes an award for the cost of defending the slander claim, we will address the proration issue.

od and that Southern Publishing was aware of this when it tendered coverage to Southern Guaranty, Southern Publishing made no affirmative effort to secure dismissal of these claims. Although Southern Publishing did raise limitations as a basis for denying intervention, this argument was not pressed by Southern Publishing after the intervention was allowed. Under these circumstances the district court did not err in concluding that imposition of liability against Southern Guaranty for all defense costs would not be appropriate.

## VI. Conclusion

For the reasons discussed in part IV we disagree with the conclusion of the district court that Southern Guaranty owed no duty to defend the slander claim. However, as we read the district court's memorandum opinion and order of February 15, 1989, and the final judgment entered on February 23, 1989, the district court awarded Southern Publishing the reasonable costs of defending the assault and battery and the slander claims. For that reason we are able to, and we do hereby, AFFIRM the final judgment of the district court.