IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D

January 23, 2008

Charles R. Fulbruge III
Clerk

No. 06-61084

NATIONWIDE MUTUAL INSURANCE COMPANY

Plaintiff-Appellee

v.

LAKE CAROLINE, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This insurance case primarily involves the issue of whether the instant insurance policy provides coverage for a slander of title claim. The district court concluded that the policy did not provide such coverage and that the insurer had no duty to defend the insured against any such claim. For the reasons stated herein, we affirm.

## I. BACKGROUND FACTS

During the 1980's, Lake Caroline, Inc. ("LCI") constructed the Lake Caroline subdivision located in Madison County, Mississippi (the subdivision is hereinafter referred to as "Lake Caroline"). On August 7, 1989, the Madison County Board of Supervisors (the "Board") re-zoned Lake Carolina from "A-1

Agricultural" to "P-1 Planned Unit Development." Accordingly, on December 4, 1989, LCI executed a "Declaration of Covenants, Conditions, and Restrictions for Lake Caroline." LCI also created the Lake Caroline Planned Unit Development ("LCI PUD").

A&F Properties, LLC ("AFP") was interested in constructing and operating a golf course in Lake Caroline. On September 27, 1995, LCI and AFP entered into a "Contract for the Sale and Purchase of Real Properly" (the "Contract") under which LCI agreed to give AFP 154 acres of Lake Caroline (hereinafter referred to as the "Golf Course Lands") in consideration for AFP building and maintaining a golf course for a period of not less than ten years, i.e., until December 31, 2006. The Contract and warranty deed provided that the Golf Course Lands would be subject to zoning ordinances and other governmental regulations. AFP constructed and began operating the golf course in 1996.

On February 25, 1998, the Board adopted the 1998 Master Plan for the LCI PUD. The 1998 Master Plan was, according to LCI, the first plan adopted for the LCI PUD and reflected the then-existing conditions of Lake Caroline, including the existence of the golf course.

In 2003, AFP became disillusioned with running the golf course and instead wanted to residentially develop the Golf Course Lands. AFP twice petitioned the Board -- in November 2003 and April 2004 -- to re-zone the Golf Course Lands to allow for residential development. Both attempts were opposed by LCI, the Lake Caroline Owners' Association, and hundreds of individual homeowners. The Board tabled the November 2003 petition as premature because AFP was contractually obligated to operate the golf course until December 31, 2006. The Board's denial of the April 2004 petition on the same grounds was affirmed on appeal by the Circuit Court of Madison County and then the Mississippi Supreme Court. See A&F Props., LLC v. Madison County Bd. of Supervisors, 933 So. 2d 296 (Miss. 2006).

On December 9, 2004, AFP filed suit in state court against LCI alleging breach of contract, breach of warranty deed, and slander of title claims. According to the AFP complaint, the Board had initially approved a master plan for Lake Caroline in 1989. However, the Board lost the only physical copy of the 1989 Master Plan, prompting it to adopt a new master plan in 1998. AFP alleges that it knew nothing of the 1998 Master Plan because LCI withheld the fact that it was presenting a new plan to the Board. AFP further alleges that LCI withheld from the Board that AFP was free to make other use of its property after the Contract term expired. AFP also claims that LCI repeatedly misrepresented to the Board that LCI was the only developer within the LCI PUD, implying that AFP was not a developer and did not have rights to develop the subject property. AFP characterizes LCI's conduct as intentional and/or malicious.

LCI owns an insurance policy (the "Policy") issued by Nationwide Mutual Insurance Company ("Nationwide"). On November 17, 2005, Nationwide filed suit in federal court seeking a declaratory judgment that the allegations in the AFP complaint do not trigger its duty to defend under the Policy. The relevant provisions policy are as follows:

> Coverage A governs "property damage" and provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

"Property damage" is defined to include:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

However, coverage is limited to property damage "caused by an 'occurrence' that takes place in the 'coverage territory.'" An "occurrence" is defined in the Policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Finally, the Policy contains an "expected or intentional conduct" exclusion. Thus, coverage does not apply to property damage that is "expected or intended from the standpoint of the insured."

Coverage B governs "personal and advertising injury" and provides, in pertinent part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

"Personal and advertising injury" is defined in the Policy to include "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." However, the Policy also contains a "knowledge of falsity" exclusion. Thus, coverage does not apply to any "'[p]ersonal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

4

On September 28, 2006, the district court entered judgment in favor of Nationwide on the ground that the AFP complaint alleges only intentional conduct thereby triggering the "expected or intentional conduct" exclusion under Coverage A and the "knowledge of falsity" exclusion under Coverage B. Thus, according to the district court, Nationwide has no duty to defend LCI against the AFP complaint because the allegations in that complaint do not arguably fall within the scope of coverage. LCI filed this timely notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's summary judgment ruling de novo, applying the same standard as the district court. Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 408 (5th Cir. 2002). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, we must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hockman v. Westward Commc'ns, L.L.C., 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, we must therefore "refrain from making credibility determinations or weighing the evidence." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007).

Because this is a diversity case, this court applies the substantive law of Mississippi. Mulberry Square Prods. v. State Farm Fire & Cas. Co., 101 F.3d 414, 420 (5th Cir. 1996) (citing Sentry Ins. v. R.J. Weber Co., 2 F.3d 554, 556 (5th Cir. 1993)). "The reach of an insurance contract . . . is a matter of law that we review de novo." Id. (quoting Sentry, 2 F.3d at 556).

## III. ANALYSIS

"Under Mississippi law, an insurer's duty to defend an action against its insured is measured, in the first instance, by the allegations in the plaintiff's

pleadings, and only if the pleadings state facts which bring the injury within the coverage of the policy is the insured required to defend." Mulberry, 101 F.3d at 421 (quoting EEOC. v. South. Publ'g Co., 705 F. Supp. 1213, 1215 (S.D. Miss. 1988)); see also J.C. Meng v. Bituminous Cas. Corp., 626 F. Supp. 1237, 1240-41 (S.D. Miss. 1986). An exception to this rule exists when the insurer is "presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy." Id. at 422 (citing Merchants Co. v. Amer. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992)).[1] In such situations, the duty to defend is triggered. Id. In evaluating whether a potential for coverage exists, "we look not to the particular legal theories . . . but to the allegedly tortious conduct underlying the suit." Ingalls Shipbuilding v. FIC, 410 F.3d 214, 225 (5th Cir. 2005) (citation omitted). The rules of construction of insurance contracts under Mississippi law are as follows:

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance

---

[1] We recognize that this statement of Mississippi law is incorrect to the extent that it implies that an insurer has an absolute duty to conduct a reasonable investigation to determine the true facts before declining to defend or extend coverage. The Mississippi Court of Appeals has since clarified that no such duty exists under Mississippi law and that federal courts interpreting otherwise are wrong. See Terracina Motor Co. v. Universal Underwriters Ins. Co., Case No. 97-CA-00052, 1998 Miss. App. LEXIS 602, **9-12 (Miss. Ct. App. Jul. 21, 1998). However, that decision was unpublished. In Mississippi, "[o]pinions in cases which have not been designated for publication shall not be cited, quoted or referred to by any court." Miss. R. App. P. 35-B. Thus, it is unclear whether we are free to disregard this court's precedent in Mulberry on the basis of an unpublished opinion by the Mississippi Court of Appeals. Nonetheless, we need not address this issue because even if Nationwide had such a duty, LCI is unable to articulate any additional facts that would arguably trigger coverage under the Policy.

policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998). With these principles in mind, the first question is whether the allegations in the AFP complaint trigger coverage under the Policy. If not, the next question is whether Nationwide knew of facts or could have reasonably ascertained facts that would have triggered coverage under the Policy. Because the parties focus almost exclusively on Coverage B, we begin our analysis there.

## A. Personal and Advertising Injury - Coverage B

The parties agree that the only possibility for coverage under Coverage B arises out of subsection d of the definition "personal and advertising injury," which includes coverage for injuries arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Coverage is excluded, however, if the publication was "done by or at the direction of the insured with knowledge of its falsity."

The district court held that because the AFP complaint alleges that LCI's conduct was intentional, the "knowledge of falsity" exclusion applies to preclude coverage. In doing so, the district court erred. The AFP complaint alleges that LCI's conduct was intentional and/or malicious. "Malice" in this context does not require knowledge of falsity. Instead, a party can be deemed to have acted with malice under Mississippi law upon a showing of a reckless disregard for the

7

truth.  See Eckman v. Cooper Tire & Rubber Co., 893 So. 2d 1049, 1053 (Miss. 2005); Bullock v. City of Pascagoula, 574 So. 2d 637, 642 (Miss. 1990).  A reckless disregard for the truth requires only that "the defendant in fact entertained serious doubts as to the truth of his publication."   Journal Publ'g Co. v. McCullough, 743 So. 2d 352, 361  (Miss. 1999) (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989)).

This court has held under Mississippi law that "knowledge of falsity" exclusions do not apply to conduct constituting a "gross and reckless disregard of the truth."  EEOC v. South. Publ'g Co., Inc., 894 F.2d 785, 790 (5th Cir. 1990); see also Am. Home Assur. Co. v. United Space Alliance, LLC, 378 F.3d 482, 488 (5th Cir. 2004) ("[I]f liability can be imposed without proving that the false statements were made with the knowledge that they were false, the 'knowledge of falsity' exclusion will not apply to preclude coverage.").  Indeed, limiting the reach of the "knowledge of falsity" exclusion in this regard is consistent with the principle under Mississippi law that exclusions are to be construed in favor of the insured whenever reasonable.  Centennial, 149 F.3d at 382-83.  Thus, because the AFP complaint alleges that LCI acted with malice, which is defined to include a reckless disregard for the truth, we conclude that the "knowledge of falsity" exclusion does not apply to preclude coverage in this case.

However, we affirm the judgment of the district court on other grounds. See Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 258 (5th Cir. 2001) ("We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court.").  The parties agree that the only claim that even arguably creates the possibility for coverage is the slander of title claim.  According to the Mississippi Supreme Court:

> "Slander of title" is a phrase commonly employed to describe words or conduct which bring or tend to bring in question the right or title of another to particular property, as distinguished from the disparagement of the property itself.  The slander may consist of a

8

statement in writing, printing, or by word of mouth, and may relate to personal as well as real property. . . . [T]he general rule of liability for slander of title is stated as follows: "One who falsely and maliciously publishes matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages."

. . .

Words spoken of property are not in themselves actionable. But the publication of false and malicious statements, disparaging of plaintiff's property or the title thereto, when followed, as a natural, reasonable and proximate result, by special damage to the owner, are actionable. The false statement may consist of an assertion that plaintiff has no title to the property of which he is the ostensible owner, or that his title is defective, or that defendant has an interest in or lien upon the property. Whatever be the statement, however, in order for it to form the basis of a right of action it must have been made, not only falsely, but maliciously.

Walley v. Hunt, 54 So. 2d 393, 396 (Miss. 1951) (internal quotations and citations omitted). However, the Policy itself expressly limits coverage to the slander of a person or organization or disparagement of a good, product, or service. Although Mississippi courts have not yet addressed this issue, other courts are unanimous in holding that slander of title claims pertain only to real property, which is not a person, organization, good, product, or service. See, e.g, ABM Indus., Inc. v. Zurich Am. Ins. Co., No. C05-3480, 2006 WL 2595944, **26-27 (N.D. Cal. Sept. 11, 2006); U.S. Fid. & Guar. Co. v. Saddle Ridge, L.L.C., No. 98CV2565, 1999 WL 1072905, *5 (D. Kan. Sept. 27, 1999); Kickham Group, Inc. v. Am. Nat'l Fire Ins. Co., No. 3:96CV1823, 1997 WL 600710, **2-3 (N.D. Tex. Sept. 24, 1997); Etchison v. Westfield Ins. Co., No. 5:05CV99, 2006 U.S. Dist. LEXIS 71467, **22-29 (N.D.W.V. Sept. 29, 2006); Thompson v. Md. Cas. Co., 84 P.3d 496, 506-07 (Colo. 2004); Wylin v. Auto Owners Ins. Co., No. 255669, 2005 Mich. App. LEXIS 2568, **13-14 (Mich. Ct. App. Oct. 18, 2005); Acme Constr.

Co., Inc. v. Cont'l Nat'l Indem. Co., No. 81402, 2003 WL 194879, **6-7 (Ohio Ct. App. Jan. 30, 2003); Bank One, N.A. v. Breakers Dev., 559 N.W.2d 911, 912-13 (Wis. Ct. App. 1997). We see no reason why Mississippi courts would rule differently. Thus, we conclude that Mississippi courts would follow this unanimous trend and conclude that slander of title claims do not trigger coverage under policies that limit coverage to the slander of a person or organization or disparagement of a good, product, or service.

None of the cases cited by LCI compels a different result. Indeed, the polices at issue in each of those cases provided coverage for slander generally and did not limit coverage to the slander of a person or organization or disparagement of a good, product, or service. See, e.g., Valley Improvement Ass'n v. USF&G, 129 F.3d 1108, 1118 (10th Cir. 1997) (policy covered damages arising out of "the publication or utterance of a libel or slander or of other defamatory or disparaging material"); Classic Corp. v. Charter Oak Fire Ins. Co., No. 93CV5655, 1995 WL 295824, *1 (C.D. Cal. Feb. 22, 1995) (same); Royce v. Citizens Ins. Co., 557 N.W.2d 144, 147 (Mich. App. Ct. 1996) (policy covered damages arising out of "libel, slander").

Although we conclude that the policy at issue does not cover slander of title claims, LCI is correct that this court's review is not limited to the particular legal theories alleged in the AFP complaint. See Ingalls, 410 F.3d at 225 ("[W]e look not to the particular legal theories . . . but to the allegedly tortious conduct underlying the suit."); Merchants, 794 F. Supp. at 618 (holding under Mississippi law that duty to defend is triggered "when there is any basis for potential liability under the policy. . . . for the allegations raised in the . . . action"); Employers Reinsurance Corp. v. Martin, Gordon & Jones, Inc., 767 F. Supp. 1355, 1359-60 (S.D. Miss. 1991) ("[I]t is the facts alleged, not the pleader's legal conclusions, that are relevant to the insurer's duty to defend."); see also Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., 43 F.3d 1119, 1122 (7th

Cir. 1994) ("[F]or example, if the complaint alleges facts that if proved would show that the insured had infringed the plaintiff's copyright, the policy kicks in even if the complaint charges the insured only with fraud or intentional infliction of emotional distress."). Thus, as long as the allegations in the AFP complaint make out some claim that has the possibility of triggering coverage, Nationwide has a duty to defend even if the complaint does not pursue that particular legal theory as a basis for relief. As the Seventh Circuit reasoned:

> Defamation and disparagement are explicitly covered by the basic policy, and defamation by the umbrella policy. But neither tort is named in the counterclaim. No matter. Coverage does not depend on the characterization of the wrong by the plaintiff . . . . Modern pleading requires the pleading only of a claim, not of a legal theory; and so if a specific tort or other legal wrong named in the insurance policy had to be named in the suit for liability coverage to exist, insurance protection could be lost as the result of a totally inconsequential omission by the drafter of the complaint. Such a rule would also be an invitation to strategic pleading.

Cincinnati Ins. Co. v. E. Atl. Ins. Co., 260 F.3d 742, 745 (7th Cir. 2001).

LCI cites the following allegations that, according to it, serve to trigger Nationwide's duty to defend:

> [T]he MCBS, at the request of LCI, approved another Master Plan for the PUD dated February 19, 1998.
>
> When LCI presented the 1998 Master Plan to the MCBS and requested that it be approved, LCI withheld from the MCBS the details of the Contract and Warranty Deed.
>
> LCI withheld from [AFP] the fact that it was presenting to the MCBS, and requesting approval of, the 1998 Master Plan.
>
> As a result of the actions of LCI, the 1998 Master Plan was approved by the MCBS without [AFP] being given an opportunity to advise the MCBS of its contract and deed rights.

LCI opposed [AFP]'s request, using as a basis for its opposition, the 1998 Master Plan which LCI had approved by withholding information from the MCBS and [AFP].

LCI made representations to the MCBS and to the public that it was the only developer of the PUD indicating that [AFP] was not a developer and did not have rights to develop the subject property in accordance with applicable zoning ordinances.

LCI made representations to the MCBS and to the public that [AFP] was prohibited by the Declaration of Covenants, Conditions and Restrictions for Lake Caroline from developing the subject property.

LCI has continued to do all it can to prevent [AFP] from exercising its right to develop the subject property and change its use after December 31, 2006 as contemplated by the Contract and Warranty Deed.

According to LCI, these allegations make out a claim for slander of person or organization or disparagement of goods, products, or services. We disagree. According to the AFP complaint, LCI stated that "[AFP] did not have rights to develop the subject property" and that "[AFP] was prohibited by the Declaration of Covenants . . . from developing the subject property." Moreover, according to the AFP complaint, "LCI has continued to do all it can to prevent [AFP] from exercising its right to develop the subject property and change its use." Assuming that these statements are slanderous or disparaging, they do not slander a person or organization or disparage a good, product, or service. At best, these alleged statements do nothing more than slander AFP's title to the subject property and the Policy does not cover such claims.

Because the allegations in the complaint do not trigger the duty to defend, this court must next address whether Nationwide knew of facts or could have reasonably ascertained facts that would have triggered coverage under the Policy. See Mulberry, 101 F.3d at 422 (citing Merchants Co., 794 F. Supp. at 617). Here, LCI argues that a reasonable investigation would have revealed that

(1) LCI did not make any false statements before the Board, or if any false statements were made by LCI, LCI did not know they were false; (2) AFP's conclusory allegations were unsupported by the evidence; and (3) documents in the state court suit contradicted or called into serious question the validity of AFP's allegations. These additional facts, however, do not trigger coverage or in any way alter our conclusion that AFP is simply alleging a slander of title claim, which the Policy does not cover. Accordingly, we conclude that LCI has not established that the AFP complaint itself -- or any additional facts -- trigger the duty to defend under Coverage B of the Policy.

## B. Property Damage - Coverage A

LCI also argues that there is a possibility of coverage under Coverage A of the Policy, which covers "property damage" caused by an "occurrence." We reject this argument for three independent reasons. First, the Policy only covers property damage "caused by an 'occurrence' that takes place in the 'coverage territory.'" Here, there is no suggestion that the alleged slanderous statements took place in Lake Caroline.

Second, it is doubtful that the allegations in the AFP complaint satisfy the Policy's definition of "occurrence," which limits coverage to property damage resulting from "an accident." The Mississippi Supreme Court has cited with favor the following definition of "accident" for insurance coverage purposes:

> An accident is anything that happens or is the result of that which is unanticipated and takes place without the insured's foresight or anticipation. . . . As used in insurance policies it is simply an undersigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act.

Allstate Ins. Co. v. Moulton, 464 So. 2d 507, 509 (Miss. 1985) (quoting 7A Appleman, Insurance Law and Practice § 4492 (Berdal ed. 1979)). We have already held that the allegations in the AFP complaint state only a slander of

title claim. Under Mississippi law, such claims require a showing of malice. Walley, 54 So. 2d at 396. A party can be deemed to have acted with malice under Mississippi law upon a showing of a reckless disregard for the truth, which requires sufficient evidence to establish that "the defendant in fact entertained serious doubts as to the truth of his publication." McCullough, 743 So.2d at 361 (quoting Harte-Hanks Commc'ns, 491 U.S. at 688). Such conduct hardly constitutes "an undersigned, sudden, and unexpected event."

Third, LCI concedes that the subject property was not physically injured. The only other property damage that is covered under the Policy is the "[l]oss of use of tangible property." However, under Mississippi law, injurious falsehood claims -- such as slander of title -- must include a showing of economic or pecuniary damages. See Smith v. Magnolia Lady, Inc., 925 So. 2d 898, 906 (Miss. Ct. App. 2006). This court has recognized the abundance of case law holding that "purely economic losses . . . do not constitute 'the loss of use of tangible property.'" Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 542 & n.13 (5th Cir. 1992); see also Shelter Mut. Ins. Co. v. Brown, 345 F. Supp. 2d 645, 649 (S.D. Miss. 2004) (holding that damages arising out of negligent misrepresentation not property damages); Audubon Ins. Co. v. Stefancik, 98 F. Supp. 2d 751, 756 (S.D. Miss. 1999) (holding that damages arising out of defamation not property damages); State Farm Fire & Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D. Miss. 1996) ("The[] cases are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis in property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by policies like that of the [Defendant]"); Giddings v. Indus. Indem., 169 Cal. Rptr. 278, 281 (Cal. Ct. App. 1980) ("To construe the explicit words 'tangible property' to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence

14

to the plain language of the policies."). In short, the subject property itself was not damaged; if anything, the reputation of AFP's title to the subject property was damaged and the resulting injury was purely economic. The distinction is subtle but important and does not serve to trigger the duty to defend under the Policy.

Even if this court goes beyond the allegations in the AFP complaint, LCI does not isolate any additional facts that would trigger coverage or in any way alter our conclusion that AFP is simply alleging a slander of title claim, which did not occur in Lake Caroline, does not meet the definition of an "occurrence" in the Policy, and does not involve damage that would constitute the loss of use of tangible property as required under the Policy. Accordingly, we conclude that LCI has not established that the AFP complaint itself -- or any additional facts -- trigger the duty to defend under Coverage A of the Policy.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.