IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2008

Charles R. Fulbruge III
Clerk

No. 07-20339

EMI S. ESQUIBEL

Plaintiff-Appellant

v.

CHASE MANHATTAN BANK USA, N.A.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-419

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff Emi S. Esquibel ("Esquibel"), appealing the district court's grant of summary judgment in favor of Defendant Chase Manhattan Bank, U.S.A., N.A., ("Chase"), raises a novel issue of statutory interpretation, viz., whether complained-of "finance charges" may constitute "billing errors" under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, et seq. Based on the relevant statutory language, we find they cannot. Thus, we AFFIRM the district court's grant of summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## Factual and Procedural History

On July 4, 2004, Esquibel applied to open a credit card account with Chase. Chase approved the application and issued the credit card. On July 21, 2004, Esquibel placed the first charge on the card by transferring a credit balance of $3,687.46 to the account; consistent with the terms of the credit card agreement, Chase assessed a $50 transaction fee for the transfer. This fee appeared as a "finance charge" on Esquibel's credit card statement dated August 12, 2004. In response, Esquibel submitted to Chase a payment of $75; this would be Esquibel's last payment on the account. During the next account period, Esquibel used her credit card to write herself a convenience check in the amount of $8,000. Again, consistent with the terms of the account, Chase charged Esquibel a $50 transaction fee for the convenience check, and this fee appeared as a "finance charge" on Esquibel's September 14, 2004, statement. Esquibel made no payment on this statement. As a result, Chase assessed a late-payment fee of $35 on the account; this fee appeared on Esquibel's October 13, 2004, statement as a "late fee." Again, Esquibel submitted no payment.

The following month, Chase sent Esquibel another regular statement, dated November 12, 2004. In response to this statement, Esquibel sent a form letter[1] styled "First Notice of Billing Errors" to Chase's dispute department. This letter alleged that Chase committed billing errors by imposing finance

---

[1] Esquibel's letter, which was purchased via the internet from a debt elimination service, is identical to a number of other letters involved in similar suits. See, e.g., *Langenfeld v. Chase Bank USA, N.A.*, No. 05-CV-619, 2008 WL 647511 (N.D. Okla. Mar. 10, 2008); *Wash. Mut. Bank v. Forque*, No. 07-MC-6027, 2007 WL 4232708 (W.D.N.Y Nov. 7, 2007); *Eicken v. USAA Federal Savings Bank*, 498 F. Supp.2d 954 (S.D. Tex 2007); *Gengo v. Target Nat. Bank*, 513 F. Supp. 2d 842 (S.D. Tex 2007); Cunningham v. Bank One, 487 F. Supp.2d 1189, 1195 (W.D. Wash 2007).

charges on Esquibel's account.[2] Chase received the letter on December 6, 2004, and responded on December 9, 2004, acknowledging Esquibel's letter, indicating that Chase had previously responded to a similar letter sent by Esquibel,[3] and notifying Esquibel that future inquiries voicing the same concerns would receive no response.

During the following months, Esquibel sent Chase five more letters asserting billing errors in identical language; Esquibel also sent two other letters asserting that her billing dispute remained unresolved. Chase sent Esquibel various letters offering payment plans or other options for Esquibel to resolve her outstanding bill. Finally, in two letters sent in March and April of 2005, Chase notified Esquibel that her account balance was scheduled to be written off as bad debt that would be reported to all national credit reporting agencies. In May of 2005, a third-party collection service sent Esquibel a past-due notice, and Chase sent two additional letters seeking to set up payment arrangements.

Months later, Esquibel filed suit against Chase in the United States District Court for the Souther District of Texas. Esquibel alleged that Chase had failed to fulfill its FCBA statutory obligations to respond to her December 6

---

[2] The letter reads in relevant part as follows:

> Because I believe I should not have been charged finance charges or fees for the history of this account, I dispute the accuracy of the following items on my statements which have been calculated based on the inclusion of those charges: the current balance, the amounts and payments due and all finance charges and other fees charged since the account was opened. The exact amount of all such previous finance charges and fees hereby disputed will be determined after you provide the documentary evidence requested below.

[3] Esquibel sent Chase a letter dated September 30, 2004, complaining without explanation of an unspecified billing error; however, Esquibel does not rely on this September letter in the instant suit.

notice of a billing error, see 15 U.S.C. 1666, et seq.; 12 C.F.R. § 226.13. Claiming that Chase had "committed at least 342 violations of the [Truth in Lending Act] and the [FCBA]," Esquibel requested over $342,000 in damages.

The matter was referred to a magistrate judge, and both Esquibel and Chase filed for summary judgment. The magistrate recommended granting Chase's motion for summary judgment on the grounds that Chase's FCBA duty was never triggered because Esquibel's letters, complaining only of finance charges, failed to state a billing error as defined by the FCBA. The district court adopted the magistrate's recommendations and entered final judgment in favor of Chase. Esquibel timely appealed.

## Analysis

We review summary judgment rulings de novo. See Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414, 418 (5th Cir. 2008). A party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Here the parties agree that there are no disputed issues of material fact; the only dispute is whether Esquibel's correspondence triggered Chase's FCBA obligations. Thus, we review only whether the judgment below was correct as a matter of law. See id.

The FCBA provision at issue, 15 U.S.C. § 1666, et seq., "provides a procedure through which a debtor can dispute statements containing a billing error issued by a creditor." Pinner v. Schmidt, 805 F.2d 1258, 1264 (5th Cir.

1986).  If a debtor sends a creditor a written billing-error notice in accordance with the FCBA's requirements and if the creditor receives this notice within sixty days of transmitting the challenged billing statement, the FCBA imposes two separate obligations upon the creditor: the creditor must send a written acknowledgment of the notice within thirty days and must investigate the matter and either correct the account or give written explanation of the disputed charge within ninety days.  See 15 U.S.C. § 1666;  American Exp. Co. v. Koerner, 452 U.S. 233, 236 (1981);  Pinner, 805 F.2d at 1264.  To trigger these obligations, a valid FCBA billing error notice must meet the following requirements: (1) the debtor identifies her name and account number, (2) the debtor "indicates [her] belief that the statement contains a billing error and the amount of such billing error," and (3) the debtor explains her belief that the statement contains a billing error.  See 15 U.S.C. § 1666(a).

The issue before us is whether Esquibel's billing error notice complied with the second of these FCBA requirements, i.e., whether it indicated a "belief that the statement contain[ed] a billing error."  See id. (emphasis added).  The district court held that Esquibel's correspondence did not complain of a billing error as a matter of law because Esquibel complained only of finance charges that, according to the FCBA's statutory definition, do not constitute billing errors.  We agree; thus we affirm the district court's holding for essentially the reasons stated by the district court.

Esquibel's complaint alleges that the finance charges imposed on her account constitute billing errors under 15 U.S.C. § 1666(b)(2).[4]  This section

---

[4] In her complaint Esquibel also asserted that her letters identified a billing error under 15 U.S.C. § 1666(b)(5), and Esquibel briefly reurges this argument on appeal.  This claim is addressed below.

defines a billing error as "a reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." 15 U.S.C. § 1666(b)(2). Thus, under this statutory definition, whether a finance charge constitutes a billing error turns upon whether a finance charge reflects "an extension of credit." See id.

According to the statutory definition of "finance charge," it does not reflect an extension of credit. For purposes of the FCBA, "finance charge" is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a) (emphasis added). Thus, the plain statutory language provides that a finance charge does not reflect an extension of credit but rather reflects a charge incident to an extension of credit.[5] To conclude otherwise would be to ignore Congress's use of the phrase "incident to," and we may not so disregard statutory language. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citing United States v. Ron Pair Enters.,

---

[5] In other contexts, we have observed a similar distinction between extensions of credit and finance charges on the basis that finance charges serve as precursors to extensions of credit. See, e.g., Berryhill v. Rich Plan of Pensacola, 578 F.2d 1092, 1098 (5th Cir. 1978) (identifying a finance charge as a fee "imposed as a condition before credit is extended") (emphasis added); see also First Acadian Bank v. FDIC, 833 F.2d 548, 500 (5th Cir. 1987) ("payment of the fees was 'incident to the extension of credit,' because the Bank would not extend credit otherwise") (citing Beryhill, 578 F.2d at 1098); James Lockhart, What Constitutes "Finance Charge" under § 106(a) of the Truth in Lending Act (15 U.S.C.A. § 1605(a)) or Applicable Regulations,154 A.L.R. Fed. 431 § 2[a] & n.4 ("[c]ourts have held that the key question in determining whether a charge is 'incident to the extension of credit' is whether a creditor refuses to extend the credit unless the borrower agrees to the charge") (citing, inter alia, Berryhill, 578 F.2d at 1098).

Inc., 489 U.S. 235, 241-42 (1989)); Tesfamichael v. Gonzales, 411 F.3d 169, 173 (5th Cir. 2005) ("Absent certain exceptional circumstances, e.g., an absurd result, we will not ignore the plain language of a statute"); see also Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 362 (5th Cir. 1995) (refusing to interpret a statute as to render a phrase "mere surplusage."). Thus, the text of the FCBA forecloses Esquibel's argument that a finance charge is an extension of credit.[6] Because a finance charge is not an extension of credit for purposes of the FCBA, the complained-of finance charges cannot constitute billing errors under 15 U.S.C. § 1666(b)(2).

Esquibel contends that even if a finance charge is not a billing error under 15 U.S.C. § 1666(b)(2), her letter still complained of a billing error as alternately defined under 15 U.S.C. § 1666(b)(5); however, this argument is unavailing. Section 1666(b)(5) defines a billing error as "a computation error or similar error of an accounting nature of the creditor on a statement," 15 U.S.C. § 1666(b)(5), and no record evidence indicates that the finance charges assessed to Esquibel's account were computational or similar errors. To the extent that Esquibel argues that the minimum payment and total payment requested in her billing statement were computational errors because they included the finance charges, such an assertion also fails because it simply restates the claim, rejected above, that the finance charges constituted billing errors.

---

[6] Though Esquibel asserts a series of related arguments contrary to this holding, we must reject them all in light of the statutory language discussed above. For example, Esquibel urges that a finance charge is an extension of credit because (1) Chase allows debtors such as Esquibel to delay payment until the date that the minimum payment is due, (2) Chase allows finance charges to remain outstanding for subsequent billing cycles and assesses additional fees on the charges, and (3) Chase counts finance charges against available credit in a credit card account. However, all of these arguments ignore the statutory definition of "finance charge" that specifically distinguishes it from an extension of credit.

Conclusion

Esquibel's complained-of finance charges do not constitute billing errors as defined in 15 U.S.C. § 1666(b)(2) or (5).  Accordingly, Esquibel's claim fails as a matter of law, and the district court correctly granted summary judgment in favor of Chase. Thus, we AFFIRM the district court's holding.