IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2008

Charles R. Fulbruge III
Clerk

No. 06-31007

UNITED STATES OF AMERICA

Plaintiff

v.

JESCO CONSTRUCTION CORPORATION, ET AL.

Defendant

UNITED STATES FIRE INSURANCE COMPANY

Intervenor - Appellant

v.

GENERAL ELECTRIC CAPITAL CORPORATION; PHOENIXCOR, INC.

Intervenors - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

DENNIS, Circuit Judge:

This is an appeal from a summary judgment of the United States District Court, Eastern District of Louisiana, resolving claims in this statutory interpleader action filed pursuant to 28 U.S.C. § 1335. The United States commenced this action on behalf of its agency, the U.S. Army Corps of Engineers

("the Corps"), and deposited in the district court $230,000 owed by the Corps to Jesco Construction Company ("Jesco") for the construction of pile dikes on the Mississippi River between Baton Rouge and the Gulf of Mexico ("Mississippi River Project"). The United States named several defendants who adversely claimed authority to receive payment on behalf of Jesco.[1] However, two of Jesco's creditors intervened, each claiming a superior and exclusive right to the funds: (a) General Electric Capital Corporation ("G.E.") asserted a perfected U.C.C. security interest in Jesco's assets for the payment of substantial loans it made to Jesco for the purchase of dredge boats and other business purposes, and (b) United States Fire Insurance Company ("U.S. Fire"), Jesco's bonding company on a different Corps project in Charleston, South Carolina, ("Charleston, S.C. Project"), asserted an equitable subrogation claim against Jesco's assets by virtue of having paid for the completion of that project after Jesco defaulted. G.E. and U.S. Fire filed cross-motions for summary judgment. Three of the named defendants filed no response, and two others supported the supremacy of G.E.'s claim. In ruling on the motions, the district court held that G.E.'s perfected security interest in the $230,000 due Jesco for its work on the Mississippi River Project had priority over U.S. Fire's claim to an interest in the funds. U.S. Fire appealed, and we AFFIRM for the reasons hereinafter assigned.

As the facts are not in dispute, we review the district court's summary judgment de novo to determine whether it was rendered according to law. See

---

[1] The United States named as defendants: Jesco Construction Corporation, a Louisiana corporation; Jesco Construction Corporation of Mississippi, a Mississippi corporation; Osborn & Osborn A.P.L.C., a Louisiana corporation; R.A. Osborn, Jr., a person domiciled in Louisiana; and New Orleans Marine Services, Inc., a Louisiana Corporation. Because there are at least two adverse claimants of diverse citizenship and the amount in controversy exceeds $500, the diversity jurisdictional requirements of 28 U.S.C. § 1355 are met.

Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414, 418 (5th Cir. 2008). Louisiana's substantive law governs our decision because Louisiana is the forum state in this diversity-based statutory interpleader case,[2] and Louisiana's own law is the proper choice of law under the facts and its conflicts of law rules.[3] Although the parties disregarded Louisiana law in their written and oral arguments, they have not expressly chosen or clearly relied on the law of another state.[4] It is undisputed that under Louisiana U.C.C. law G.E. has a perfected security interest in the assets of Jesco, including the funds due Jesco deposited by the United States in this interpleader action;[5] and that U.S. Fire has asserted only a common-law equitable subrogation claim, which the Louisiana courts have consistently declined to recognize.[6] Accordingly, we conclude that, under Louisiana law, G.E.'s perfected security interest takes

---

[2] See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

[3] See La. Civ. Code arts. 3515, 3537.

[4] See La. Civil Code art. 3540; cf. La. R.S. 10:1-301 et seq. (U.C.C.).

[5] La. Rev. Stat. § 10:9-310(a) ("[A] financing statement must be filed to perfect all security interests . . . ,"); La. Rev. Stat. § 10:9-322(a)(2) ("a perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien in the same collateral").

[6] See Great Southwest Fire Ins. Co v. CNA Ins. Co., 547 So. 2d 1339, 1343 (La. App. 3 Cir. 1989); see also Hudson v. Forest Oil, 372 F.3d 742, 748 (5th Cir. 2004); Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co., 126 F.3d 727 (5th Cir. 1997); Institute of London Underwriters v. First Horizon Ins. Co., 972 F.2d 125, 127 (5th Cir. 1992).

precedent over the unsecured, un-perfected creditor's claim asserted by U.S. Fire.[7]

Further, even though U.S. Fire's claim might have been recognizable as a right of subrogation by operation of law under Louisiana Civil Code Article 1829(3),[8] that right would have entitled U.S. Fire only to avail itself of the action and any security of the Corps against Jesco arising from Jesco's default upon the Charleston, S.C. Project contract;[9] and it would have enabled U.S. Fire to recover from Jesco only to the extent of the performance U.S. Fire rendered to the Corps under that contract.[10] According to our legal and record research, Jesco's default upon the Charleston, S.C. Project contract created no security interest under Louisiana law that U.S. Fire could have obtained by subrogation to assert against the funds due Jesco for its performance of the Mississippi River construction work in Louisiana. Therefore, we conclude that U.S. Fire could have asserted as a legal subrogee, at most, only the right and action of an

---

[7] La. Rev. Stat. § 10:9-322(a)(2) ("a perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien in the same collateral"); Thomas A. Harrell, A Guide to the Provisions of Chapter Nine of Louisiana's Commercial Code, 50 La. L. Rev. 711, 755 (1990) ("Perfected security interests have priority over unperfected ones.").

[8] La.Civ. Code art. 1829(3)("Subrogation takes place by operation of law . . . In favor of an obligor who pays a debt he owes with others or for others as a result of the payment.").

[9] La.Civ. Code art. 1826(A)("When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee.").

[10] La.Civ. Code art. 1830 ("When subrogation takes place by operation of law, the new obligee may recover from the obligor only to the extent of the performance rendered to the original obligee. The new obligee may not recover more by invoking conventional subrogation.").

unsecured creditor[11] of Jesco against the funds due for its work on the Mississippi River Project between Baton Rouge and the Gulf. As such, under Louisiana law, U.S. Fire's unsecured claim still would have been outranked by G.E.'s perfected security interest claim.

The magistrate judge, who undertook the arduous task of analyzing the tortuous argument of U.S. Fire based on the vagaries of the common-law equitable subrogation doctrine, concluded that U.S. Fire's argument lacked merit because its suggested application of equitable subrogation would yield an inequitable result in this case. We are inclined to agree, but we do not address the equitable subrogation doctrine here because it has been rejected by Louisiana courts. Under the applicable Louisiana law it is clear that G.E.'s perfected security interest claim takes precedence over U.S. Fire's unsecured claim.

For these reasons, the judgment of the district court is AFFIRMED.

---

[11] See La. Civ. Code art. 1826 ("When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor . . . .") (emphasis added); Saul Litvinoff, 5 Louisiana Civil Law Treatise § 11.1 (2d ed.) ("[T]hat action against the obligor is personal to the third person who has performed, in the sense that it arises directly in his own patrimony, and, more often than not, the credit for which that action may be brought neither enjoys a privilege nor is assured by a particular security, which clearly means that the third person's recourse against the obligor is exposed to the risk of the obligor's insolvency."); Saul Litvinoff, Subrogation, 50 La. L. Rev. 1143, 1145-46 (1990) (same).